# EXHIBIT 1

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 3:16-cv-4882-BRM-TJB |
| | : | |
| RIDER UNIVERSITY, | : | |
| | : | **OPINION** |
| Defendant. | : | **TEMPORARILY FILED** |
| | : | **UNDER SEAL** |

---

MARTINOTTI, DISTRICT JUDGE

Before this Court is Defendant Rider University's ("Rider" or "Defendant") second Motion to Dismiss Counts III, IV, and V of Plaintiff John Doe's ("Plaintiff")[1] Amended Complaint.[2] (ECF No. 42.) Plaintiff opposes the Motion. (ECF No. 44.) Having reviewed the submissions filed in connection with the Motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

---

[1] On August 22, 2016, Plaintiff filed a Motion for Permission to Proceed under a Pseudonym. (ECF Nos. 4 and 5.) On August 7, 2018, The Honorable Tonianne J. Bongiovanni, U.S.M.J., denied Plaintiff's right to proceed under pseudonym. (ECF Nos. 48-49.) On August 22, 2018, Plaintiff filed an appeal of Judge Bongiovanni's decision. (ECF No. 54.) Oral argument on the appeal is scheduled for November 27, 2018. In light of Plaintiff's pending appeal, the Court will proceed using pseudonyms.

[2] On March 13, 2017, Defendant filed its initial Motion to Dismiss. (ECF No. 23.) On January 17, 2018, the Court denied in part and granted in part Defendant's Motion to Dismiss. (ECF Nos. 33-34.) On February 16, 2018, Plaintiff filed an Amended Complaint amending its prior facts and providing some more detail. (ECF No. 39.) As a result, on March 16, 2018, Defendant filed this Motion. (ECF No. 42.)

## I.   BACKGROUND

For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

### A.  The Incident Between Plaintiff and Jane Roe

Plaintiff was a freshman in good standing at Rider. (Am. Compl. (ECF No. 39 ¶ 1).) On October 18, 2015, in the early morning, Plaintiff returned to campus from an off campus party with three friends. (*Id.* ¶ 23.) He was the "designated driver that night, and was not intoxicated." (*Id.*) Upon entering Poyda Residence Hall, some of the boys went to the boys' restroom where they encountered two females, Jane Roe and Jane Roe 2. (*Id.*) Two of Plaintiff's friends finished in the restroom and went to bed. (*Id.* ¶ 24.) However, when Plaintiff left the restroom he saw his remaining friend, Joe Doe speaking with Jane Roe and Jane Roe 2, and joined the conversation. (*Id.*) Plaintiff alleges:



---

[3] One of Plaintiff's allegations is that Defendant failed to investigate whether Jane Roe 2 assaulted Joe Doe pursuant to the Anti-Harassment and Non-Discrimination Policy (the "Policy"), ▮

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████

Likewise, ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

_____

███████████████████████████████████████████████████, Plaintiff alleges he and
Jane Roe 2 are similarly situated. (*Id.* ¶¶ 113-17.) The Policy maintains:

> University employees have different abilities to maintain a
> complainant's confidentiality.
>
> • Disclosing an allegation or incident to the Title IX Coordinator,
>   Associate Vice President for Student Affairs, Department of
>   Public Safety or any other responsible employees (described in
>   the section that follows) constitutes a report to the University
>   and generally obligates the University to investigate the incident
>   and take appropriate steps to address the situation. Responsible
>   employees are required to report information concerning an
>   incident to the title IX Coordinator.

(*Id.* ¶ 117; Ex. A to ECF No. 39 at 8.) The Policy further required that "[w]hen a complainant tells
a responsible employee about an alleged violation of the Policy, the responsible employee shall
report the incident to the Title IX Coordinator, who will take immediate and appropriate steps to
investigate what happened and to resolve the matter promptly, fairly and impartially." (Ex. A to
ECF No. 39 at 9.)

Case 3:16-cv-04292-BRM-TJB Document 36-2 *SEALED* Filed 12/18/18 Page 4 of 13
Case 3:16-cv-04292-BRM-TJB Document 62 Filed 10/25/18 Page 5 of 36
PageID: 1258



Jane

Roe and Plaintiff were interrupted by a banging on the dormitory room door and several voices shouting, "Jane." (*Id.* ¶ 32.) Jane Roe ▮▮▮▮▮▮▮ opened the door, and rejoined her friends. (*Id.*)

### B. Public Safety's Preliminary Response

Approximately two hours later, at 5:00 a.m., Plaintiff was awakened by Public Safety Officers, who informed Plaintiff they were investigating a sexual assault and asked him to provide a written statement. (*Id.* ¶ 35.) Plaintiff complied. (*Id.*) "At the Public Safety building, [Plaintiff] was not told anything about the nature of Jane Roe's allegations, but he provided officers with a written statement nonetheless." (*Id.* ¶ 32.) However, he "made clear that [his] encounter with Jane Roe was at all times consensual" and that he and Jane Roe ▮▮▮▮▮▮▮

▮▮▮ (*Id.* ¶ 37.) Joe Doe also provided a written statement, which was consistent with Plaintiff's. (*Id.* ¶ 38.)

Plaintiff alleges his statements were consistent with those of Jane Roe. (*Id.* ¶ 39.) Prior to interviewing Plaintiff, the Public Safety Officers interviewed Jane Roe. (*Id.* ¶ 35.) During her interview,





(*Id.* ¶¶ 40-41.) Jane Roe 2 was also interviewed. 

### C. Reports Filed with the Lawrence Township Police Department

On October 18, 2015, Jane Roe and Jane Roe 2 engaged in a conversation with Dean Anthony Campbell ("Dean Campbell"), along with their parents, where Dean Campbell and stated,
(*Id.* ¶ 44.) Plaintiff alleges he urged Jane Roe and Jane Roe 2 to file a report with the Lawrence Township Police Department (the "Police Department"). (*Id.*) Jane Roe and Jane Roe 2 complied and reported the incident to the Police Department. (*Id.* ¶ 44.)

The girls' stories were "dramatically different from those they had twice shared with Public Safety just hours earlier and before they had time to speak with one another, their parents, or Dean Campbell." (*Id.* ¶ 45.) "For the first time, Jane Roe claimed (*Id.* ¶ 46.) Also for the first time, Jane Roe 2 claimed

(*Id.* ¶ 47.) Additionally, she claimed *Id.*) On October 19, 2015, Dean Campbell suspended Plaintiff from Rider based on the Jane Roe and Jane Roe 2's statements. (*Id.* ¶ 49.)

## D. Defendant's Policies and Procedures

Plaintiff was provided with a copy of the Policy and The Source, Defendant's student handbook, at the time of his suspension and was told Defendant "would abide by the Policy and afford him all of the rights and protections included therein." (*Id.* ¶¶ 51-53.) The Policy begins with the following, from Robert Soto, Rider's Title IX Coordinator: "All students, faculty, administrators and staff at the University have the right to expect an environment that allows them to enjoy the full benefits of their work or learning experience," and Rider "prohibits all forms of discrimination." (*Id.* ¶ 55.) It promises Defendant will "promptly investigat[e] and resolv[e] complaints of student violations of the Policy in a fair, unbiased and impartial manner." (*Id.* ¶ 56a.) The Policy requires "a trained investigator or investigators [] to promptly, fairly and impartially investigate the complaint." (*Id.* ¶ 56b.) It also provides that a respondent would be notified of the basis of any complaint or charges against him at the outset of the investigation before any hearing. (*Id.* ¶ 56c.)

If a formal hearing is conducted, it is to be conducted in front of a Student Anti-Harassment and Non-Discrimination Board composed of three "impartial and trained, professional staff members of the University community appointed by the Title IX Coordinator (or designee)" who "will serve as impartial fact finders and not as advocates for either the complainant or respondent." (*Id.* ¶ 56d.) The Policy provides that a respondent would only be found responsible if a finding of responsibility is supported by a "preponderance of the evidence," *i.e.*, if "the University establishes that it is more likely than not that the respondent is responsible for committing the act or acts complained of." (*Id.* ¶ 56e.) Any sanctions are to be "fair and proportionate to the violation and in the interests of the University community, including the respondent and complainant," and will be "warranted by a preponderance of the evidence." (*Id.* ¶ 56f.) Appeals are to be heard by three

impartial and trained University officials, who can "overturn a Board's decision if it finds that the Board exceeded the bounds of the rationally available choices given the facts and standards set forth in the Policy." (*Id.* ¶ 56g.)

Plaintiff argues he was denied all the promises made in the Policy and The Source, creating "a fundamentally unfair process under which [Plaintiff] was adjudged guilty from the very first and stripped of his ability to adequately defend himself and demonstrate his innocence." (*Id.* ¶ 57.)

### E. Community Standards Panel and Affirmation of Interim Suspension

On October 19, 2015, Dean Campbell suspended Plaintiff from Rider for sexual assault and told Plaintiff he was "going against" him. (*Id.* ¶ 75.) Dean Campbell sent him a letter advising him of his interim suspension quoting language from The Source, explaining that a community standards panel would be convened to review the interim suspension imposed by Dean Campbell. (*Id.* ¶ 53a.)

Following Plaintiff's interim suspension, Defendant empaneled a community standards panel to review Dean Campbell's interim suspension order. (*Id.* 1 ¶ 53b.) Plaintiff "presented his case before the community standards panel, and was thereafter excused so the panel could conduct its deliberations." (*Id.* ¶ 64) The community standards panel affirmed and continued the interim suspension. (*Id.* ¶ 66.) Plaintiff alleges he witnessed the chairwoman of the panel having discussions with Dean Campbell during the community standards panel's deliberation. (*Id.* ¶ 65.)

### F. Defendant's Investigation

In the weeks following the community standards panel's decision to uphold Plaintiff's suspension, Defendant conducted no investigation because, as Plaintiff alleges, Defendant was "waiting for the Mercer County Prosecutor's Office to complete its investigation." (*Id.* ¶ 67.) Based

on the allegedly inconsistent statements and lack of evidence, the Prosecutor's Office declined to prosecute Plaintiff. (*Id.* ¶¶ 5, 68.)

Thereafter, Defendant investigated Jane Roe and Jane Roe 2's allegations. (*Id.* ¶ 69.) The investigation was allegedly not in accordance with the Policy and was not impartial. (*Id.*) Detective William Eggert ("Detective Eggert") of Defendant's Public Safety Office assembled a summary affidavit parroting Jane Roe's and Jane Roe 2's statements to the Police Department and "completely ignored the girls' earlier—and contradictory—statements to Public Safety." (*Id.* ¶ 71.) Detective Eggert and officials also allegedly failed to take the investigative steps required by the Policy. According to the Policy,

> In the case of sexual violence, a sexual assault response team (SART) will be activated by the hospital should a victim seek medical attention and/or wish to have evidence collected. A specially trained sexual assault nurse examiner (SANE) will respond as part of the team to perform the examination. The evidence will be secured whether or not a victim decides to pursue criminal prosecution.

(*Id.* ¶ 72.) Plaintiff requested all evidence secured from SART and SANE but none was provided. (*Id.* ¶ 73.)

Defendant also sent Plaintiff an e-mail, while the investigation was ongoing, which Plaintiff alleges demonstrates Defendant's impartiality. The email asserted:



> We . . . have statements from those involved in the incident (including your client) that reveal your client and another student encountered two female students, who no one disputes, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Also undisputed are the facts that your client and the other male student met these female students for the first time on the evening/morning in question and within minutes of meeting them, ▮▮▮▮▮
>
> ▮▮▮▮▮▮▮▮▮▮ any activity that occurred in the dorm room, was non-consensual. . . . I am not

8

deciding this case, but the above facts reveal [that the interim suspension of [Plaintiff] was supported by sufficient evidence].

I also want to respond to your contention that the two female students are not credible because they have inconsistent statements. There are numerous articles/studies that reveal that it is not unusual – and indeed typical – for sexual assault victims to give inconsistent statements. While your client is free to point out the inconsistencies, he (and you) should be aware that there is a contrary view.

(*Id.* ¶ 76 (alteration in original).) Plaintiff alleges Defendant's impartiality is further evidenced by its webpage providing the following advice on how to help a friend who has been sexually assaulted: "BELIEVE the survivor." (*Id.* ¶ 81.)

As a result of Defendant's investigation, Defendant issued a Notice of Charge letter to Plaintiff charging him with violating the Policy and "sexual assault and sexual misconduct at a Level 1 in violation of the Policy for conduct [he] . . . engaged in with the complainant . . . on October 18, 2015." (Notice of Charge (ECF No. 24-6).)[4] The Notice of Charge further informed Plaintiff that his charges were referred to the Office of Community Standards for a formal adjudication hearing (the "Hearing") by the Student Anti-Discrimination/Harassment/Sexual Assault/Sexual Misconduct Board (the "Board") to be held on December 4, 2015. (*Id.*)

### G. The Hearing

On December 4, 2015, a Hearing was conducted before a Board of three administrators, who reported directly or indirectly to Dean Campbell. (*Id.* ¶¶ 87, 91.) Plaintiff moved to recuse the three administrators on the board due to a conflict of interest because Dean Campbell had originally declared he was "going against" Plaintiff and suspended him. (*Id.* ¶ 93.) Defendant denied Plaintiff's request for recusal. (*Id.*)

---

[4] The Court may consider the Notice of Charge irrespective of it not being attached to the Complaint because it was "explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

Plaintiff alleges the Board's biases continued throughout the Hearing. "The Board vigorously and aggressively questioned [Plaintiff], while delicately questioning Jane Roe, Jane Roe 2, and their witnesses." (*Id.* ¶ 95.) Plaintiff asked the Board to question Jane Roe and Jane Roe 2 about the contradictions in their statements, but the Board refused. (*Id.* ¶ 96.) Prior to and again at the Hearing, Plaintiff requested Jane Roe's medical records and attempted to question Jane Roe about them, but Defendant did not provide him with those records and blocked the questioning. (*Id.* ¶¶ 97, 99.) However, the Board allowed Jane Roe to testify as to her medical treatment following the incident, which according to her testimony demonstrates she was the victim of a sexual assault. (*Id.* ¶ 98.)

On December 8, 2015, in a one-page letter, the Board found Plaintiff responsible for sexual assault and expelled him from Rider. (*Id.* ¶ 84.) "There was no written opinion, no basis for the Board's decision, and no explanation of how the Board resolved the inconsistencies in the statements of Jane Roe and Jane Roe 2." (*Id.* ¶ 102.)

### H.  The Appeal

Plaintiff appealed the Board's finding of responsibility and the sanction imposed. (*Id.* ¶ 106.) An appeal panel reviewed the record, and on January 8, 2016, upheld the Board's finding of responsibility and the sanction of expulsion. (*Id.*) Following the disciplinary hearing and appeal, Plaintiff made several requests for copies of the audio recordings of his hearing. (*Id.* ¶ 108.) However, they were never provided. (*Id.*)

Plaintiff alleges a member of the appeal panel, Dr. James Castagnera, Esq., was not impartial because he quoted an administrator from Rider in his blog speaking about the Defendant's Title IX process:

> "In order to remedy the lack of quick and effective resolution of sexual assault cases in our courts, the Department of Education

[("DOE")] wants colleges and universities to do what the justice system can't . . . by lowering the standard of proof from 'beyond a reasonable doubt' to 'more likely than not,' and requiring that sexual assault investigations plus adjudications be completed in 60 days."

. . . "As I discovered earlier this year, when I dared, during supervisory training at a university, to criticize the due-process flaws in the campus-based system imposed by the DOE on sexual-assault investigations/adjudications, the attack dogs remain ready to slip their leashes against anyone with the temerity to come out openly against this latest American domestic 'war.'"

(*Id.* ¶¶ 121-22.)

## I.     The Litigation

On August 10, 2016, Plaintiff filed a Complaint alleging eight counts: (1) Breach of Contract (Count I); (2) Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II); (3) New Jersey Consumer Fraud ("NJCFA") (Count III); (4) Promissory Estoppel and Reliance (Count IV); (5) Negligence (Count V); (6) Intentional Infliction of Emotional Distress (Count VI); (7) Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* (Count VII); and (8) Declaratory Judgment (Count VIII). (*See* ECF No. 1.) On March 13, 2017, Defendant filed a Motion to Dismiss. (ECF No. 23.) On January 17, 2018, the Court denied in part and granted in part Defendant's Motion to Dismiss. (ECF Nos. 33-34.) On February 16, 2018, Plaintiff filed an Amended Complaint. (ECF No. 39.) As a result, on March 16, 2018, Defendant filed a Motion to Dismiss Counts III through V. (ECF No. 42.) Plaintiff opposes the Motion. (ECF No. 44.)

## II.    Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at

228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

12

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### B. Federal Rule of Civil Procedure 9(b)

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200-02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to Plaintiff's CFA and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

## III.    DECISION

### A.  Title IX (Count V)

Defendant argues Plaintiff's Title IX claim should be dismissed because he failed to sufficiently allege Defendant's actions during the disciplinary process were motivated by gender bias. (*See* ECF No. 43 at 9.) Plaintiff contends he sufficiently plead facts in his Amended Complaint supporting a plausible inference of gender bias. (ECF No. 44 at 17-23.)

Title IX provides in relevant part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities." *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-15 (2d Cir. 1994)); *see A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 805 (3d Cir. 2007). "Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to bar the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Id.* Plaintiff's Complaint alleges Defendant receives federal funds (ECF No. 1 ¶ 139) and therefore may be held liable under Title IX. Indeed, Defendant does not dispute it must comply with Title IX. (*See* ECF No. 23.)

Although the Third Circuit has not analyzed Title IX in the context of university student disciplinary proceedings, courts have recognized that students subject to disciplinary proceedings may state Title IX claims under four theories: erroneous outcome, selective enforcement, deliberate indifference, and archaic assumptions. *Yusuf*, 35 F.3d at 715; *Mallory v. Ohio Univ.*, 76

14

F. App'x 634, 638-39 (6th Cir. 2003). Plaintiff contends he has adequately alleged three theories of Title IX claims against Defendant: erroneous outcome, selective enforcement, and deliberate indifference. (ECF No. 44 at 17.)

An "erroneous outcome" claim is based on allegations that plaintiff "was innocent and wrongfully found to have committed an offense." *Yusuf*, 35 F.3d at 715. "Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Id.* However, "[i]f no such doubt exists based on the record before the disciplinary tribunal, the claim must fail." *Id.* "[T]he pleading burden in this regard is not heavy." *Id.* A complaint meets the pleading requirement if it alleges "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge." *Id.* It may also allege procedural flaws affecting the evidence. *Id.* However, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome *combined* with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.* (emphasis added). "The fatal gap is . . . the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias. A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* Examples of allegations might include "statements by members of the disciplinary tribunal, statements by pertinent university officials, [] patterns of decision-making that also tend to show the influence of gender[,] . . . [or] statements reflecting bias by members of the tribunal." *Id.*

A "selective enforcement" claim asserts that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was *affected*

*by the student's gender*." *Id.* (emphasis added). To state a "selective enforcement" claim, a plaintiff must "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Mallory*, 76 F. App'x at 641; *see Curto v. Smith*, 248 F. Supp. 2d 132, 146–47 (N.D.N.Y. 2003) (dismissing a Title IX claim under the *Yusuf* analysis for failure to state a selective enforcement claim where academically-expelled female sought to compare more favorable treatment of male who had been dismissed due to misconduct).

Regarding a deliberate indifference claim, "[t]he Supreme Court has recognized that Title IX liability may be imposed under certain circumstances where a school district is deliberately indifferent to student-on-student sexual harassment." *Lockhart v. Willingboro High Sch.*, No. 14-cv-3701, 2017 WL 4364180, at *5 (D.N.J. Sept. 29, 2017). "The 'deliberate indifference' standard is applied where a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory*, 76 F. App'x at 638; *see Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998). The actionable harassment must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe Cnty Bd. of Educ.*, 526 U.S. 629, 633 (1999). There can be no Title IX liability if the defendant responds to the known harassment in a manner "that is not clearly unreasonable." *D.V. by & through B.V. v. Pennsauken Sch. Dist.*, 247 F. Supp. 3d 464, 477 (D.N.J. 2017) (citation omitted). Courts have found that, even under this theory, a plaintiff must allege that the complained of conduct was motivated by a gender bias. *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) ("A plaintiff must prove gender bias against the defendant under either theory of Title IX.") (citing 20 U.S.C. § 1681(a) (prohibiting discrimination "on the basis of sex")); *Doe v. Univ.*

*of St. Thomas*, 240 F. Supp. 3d 984, 990 (D. Minn. 2017) (same); *Doe v. The Trs. of the Univ. of Pa.*, No. 16-5088, 2017 WL 4049033, at *18 (E.D. Pa. Sept. 13, 2017) (same); *Sarvanan v. Drexel Univ.*, No. 17-3409, 2017 WL 4532243, at *7 (E.D. Pa. Oct. 10, 2017) (same).

Under each theory, in order to prevail, Plaintiff must allege the complained of conduct was motivated by a gender bias. 20 U.S.C. § 1681(a) (prohibiting discrimination "on the basis of sex"); *see Yusuf*, 35 F.3d at 715; *see also Mallory*, 76 F. App'x at 638 ("In *Yusuf*, the Second Circuit, analogizing from Title VII law, categorized Title IX claims against universities arising from disciplinary hearings into 'erroneous outcome' claims and 'selective enforcement' claims, both of which require a plaintiff to demonstrate that the conduct of the university in question was motivated by a sexual bias."); *Univ. of St. Thomas*, 240 F. Supp. 3d at 990; *Sahm*, 110 F. Supp. 3d at 778; *The Trs. of the Univ. of Pa.*, 2017 WL 4049033, at *18; *Sarvanan*, 2017 WL 4532243, at *7.

The Court finds Plaintiff's Amended Complaint has cured its prior deficiencies to satisfy the Rule 12(b)(6) threshold. The Court will discuss all three theories of Title IX claims against Defendant in turn.

### 1. Erroneous Outcome

Defendant solely argues Plaintiff has not plead an erroneous outcome claim because he fails to allege any facts demonstrating gender bias in his disciplinary case. (ECF No. 43 at 11.) Plaintiff contends his gender bias allegations pass muster at this stage of the litigation. (ECF No. 44 at 17.)

"At the pleading stage, [a plaintiff's] allegations need only create the plausible inference of intentional gender discrimination; although alternative non-discriminatory explanations for the defendants' behavior may exist, that possibility does not bar [plaintiff's] access to discovery." *Doe*

*v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018); *see 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013) ("[T]he mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal."); *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) ("Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage."). "Simply put, [plaintiff] must plead sufficient facts to create an inference that he was wrongfully accused and that he was wrongfully adjudicated guilty and disciplined, in part because of his gender." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018).

Courts have found that specific allegations of procedurally flawed proceedings coupled with conclusory allegations of gender discrimination are not sufficient to survive a motion to dismiss. A plaintiff must also plead facts to support its allegation that gender bias was a motivating factor behind the defendant's actions. *See Yusuf*, 35 F.3d at 715 ("Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome *combined* with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss. . . . A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.") (emphasis added); *Doe v. Baum*, 227 F. Supp. 3d 784, 817 (E.D. Mich. 2017) (finding procedural flaws alleged by the plaintiff were not sufficient to support his Title IX claim because he "offered nothing more than an administrative decision by school officials which he disagreed, and unelaborated allegations that the decision must have been due to 'gender bias,' essentially because he is male, the complainant is female, and the decision was adverse to him"); *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015) (finding plaintiff's allegations that "he was denied fair procedures during the investigation 'because he is

male' is the kind of conclusory statement that courts reject as insufficient to plead this claim. . . . [T]he mere fact that [p]laintiff is male and Jane Doe is female does not suggest that the disparate treatment was because of [p]laintiff's sex."); *Prasad v. Cornell Univ.*, No. 15-322, 2016 WL 3212079, at *16 (N.D.N.Y. Feb. 24, 2016) (finding the plaintiff's allegations that the investigators intentionally misconstrued and misrepresented critical exculpatory evidence sufficient to cast doubt on the accuracy of the outcome of his disciplinary proceeding and that the plaintiff's allegations that a gender stereotype adverse to males charged with sexual assaults existed at Cornell causing such disciplinary proceedings to invariably end adversely to male accusers was sufficient to support gender bias); *Doe v. Washington & Lee Univ.*, No. 14-00052, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015) (finding the plaintiff properly plead Title IX claims because he plead sufficient facts to cast doubt on the procedures of the proceedings against him *and* demonstrated the erroneous outcome of the proceedings was caused by gender bias through school official statements).

Moreover, allegations of a bias against the alleged perpetrator in favor of the victim is insufficient to show an inference of gender bias. Indeed, courts have stressed that "[d]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm*, 110 F. Supp. 3d at 778; s*ee Doe v. Cummins*, 662 F. App'x 437, 453 (6th Cir. 2016) (affirming dismissal of respondent's Title IX claim, finding alleged procedural deficiencies showing bias in favor of sexual assault complainants "do[] not equate to gender bias because sexual-assault victims can be both male and female"); *see also Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996) (stating that "a bias against people accused of sexual harassment and in favor of victims . . . indicate[s] nothing about gender discrimination"); *Doe v.*

19

*Regents of the Univ. of Cal.*, No. 15-02478, 2016 WL 5515711, at *5 (C.D. Cal. July 25, 2016) (dismissing the plaintiff's Title IX claim because "the Court [could not] plausibly infer, as [p]laintiff does, that a higher rate of sexual assaults committed by men against women, or filed by women against me, indicates discriminatory treatment of males accused of sexual assault in the consequent proceedings"); *King v. DePauw Univ.*, No. 14–70, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014) (demonstrating a bias against students accused of sexual assault is not the equivalent of demonstrating a bias against males, even if all of the students accused of assault were male). Courts have also found that a plaintiff's allegation that the university "needed to believe the victim" "does not sustain the inference that [the university] took the genders of the victim and accused into account." *Ludlow*, 125 F. Supp. 3d at 793; *The Trs. of the Univ. of Pa.*, 2017 WL 4049033, at *18; *Sarvanan*, 2017 WL 4532243, at *7.

In *Columbia University*, the Second Circuit found the plaintiff's complaint sufficiently plead facts to support inferences of gender bias to support a Title IX claim. 831 F.3d at 56-59. The complaint alleged the investigator and the panel declined to seek out potential witnesses the plaintiff identified as sources of information favorable to him; the investigator and the panel failed to act in accordance with the university procedures designed to protect accused students; and the investigator, the panel, and the reviewing Dean, reached conclusions that were contrary to the weight of the evidence. *Id.* at 57. While the court found these allegations supported the inference of bias generally, they did not "necessarily relate to bias on account of sex." *Id.* However, additional allegations in the complaint, in addition to the above allegations, provided support for gender bias to sustain a Title IX claim. Namely, the complaint alleged:

> [D]uring the period preceding the disciplinary hearing, there was
> substantial criticism of the University, both in the student body and
> in the public media, accusing the University of not taking seriously
> complaints of female students alleging sexual assault by male

> students. It alleges further that the University's administration was
> cognizant of, and sensitive to, these criticisms, to the point that the
> President called a University-wide open meeting with the Dean to
> discuss the issue.

*Id.* Based on these additional non-conclusory allegations, the court found plaintiff sufficiently

alleged a gender bias.

In *Collick v. William Paterson Univ.*, No. 16-471, 2016 WL 6824374 (D.N.J. Nov. 17,

2016), the Court found the plaintiffs sufficiently plead a Title IX claim because they plead the

accuser's allegations against the male plaintiffs were accepted as true without any investigation

being performed and without the development of any facts or exculpatory evidence. 2016 WL

6824374 at 11. The complaint further pled the plaintiffs were not given the opportunity to respond

or explain themselves, did not receive proper notice of the specific charges, were not permitted to

confront or cross-examine the accuser, were not provided with the list of witnesses against them,

and generally were not afforded a thorough and impartial investigation. *Id.* The Court further took

into consideration the plaintiffs' briefs which argued "that universities were under pressure to

make a show of compliance with Title IX following a[n] [OCR] 'Dear Colleague Letter' in 2011."

*Id.* at 12. It found that the letter was "no more than a commonsense inference that the public's and

the policymakers' attention to the issue of campus sexual assault may have caused a university to

believe it was in the spotlight." *Id.* Ultimately, the Court concluded, "At the pleading stage, . . . an

allegation that the process was one-sided, irregular, and unsupported by evidence *may* give rise to

an inference of bias." *Id.* at 11 (emphasis added).

In *Prasad*, the court held the plaintiff's complaint "plausibly establish[d] a causal

connection between gender bias and the outcome of his disciplinary proceeding." 2016 WL

3212079, at *17. The court based its holding on a consideration of the totality of the circumstances,

which included, the plaintiff's allegation that "a gender stereotype adverse to males charged with

sexual assaults existed at Cornell causing such disciplinary proceedings to 'invariably' end adversely to male respondents." *Id.*

In *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 747-48 (S.D. Ohio 2014), the plaintiff alleged he was falsely accused of sexual assault against a female student by Xavier and that he was wrongly expelled after a flawed disciplinary proceeding. He further claimed the charges against him and the disciplinary hearing arose in the context of an investigation conducted by the U.S. Department of Education's Office of Civil Rights regarding how Xavier handled previous sexual assault allegations. *Id.* at 747. Lastly, he alleged Xavier "made him into a scapegoat" to demonstrate to the OCR that it would respond better to sexual assault allegations. *Id.* The district court agreed with the plaintiff's argument that his allegations were sufficient to state an erroneous outcome Title IX claim insofar as he alleged Xavier had "react[ed] against him, as a male, to demonstrate to the OCR that [Xavier] would take action, as [it] had failed to in the past, against males accused of sexual assault." *Id.* at 751.

The Court finds Plaintiff's Amended Complaint cured previous deficiencies and added sufficient facts to satisfy the Rule 12(b)(6) burden. Plaintiff's "allegations need only create the plausible inference of intentional gender discrimination." *Miami Univ.*, 882 F.3d at 594.

Here, Plaintiff alleges:

> Rider's deficient policies and procedures are deliberately designed to subject male students as a group to less favorable treatment that female students, because students in sexual assault cases are overwhelmingly male and the policies and procedures on their face and as applied intentionally accord unequal treatment to the accused.

> [] Rider's policies and procedures are deliberately designed to favor the female accuser and disfavor the male accused by, among other things, eliminating the most fundamental procedural safeguards for the accused, including but not limited to adequate notice of the charges and their alleged factual basis, adequate notice of the basis for findings, and access to relevant evidence.

(ECF No. 39 ¶¶ 176-77.) Plaintiff has also pled facts sufficient to cast doubt on the procedures of the proceedings against him by demonstrating Defendant accepted inconsistent female testimony over his during investigation; provided evidence to suggest that a gender stereotype adverse to males charged with sexual assaults existed at Rider causing the disciplinary procedures to end adversely to male accusers; and provided evidence that Rider was cognizant of, and sensitive to, complaints of female students alleging sexual assault.

Specifically, in addition the external pressures applied to colleges and universities since the 2011 Dear Colleague Letter, Plaintiff alleges and has provided evidence that Defendant's officials and student body has demonstrated concerns for protecting female victims of sexual assault. (ECF No. 39 ¶ 181.) In October 22, 2014, a *Rider News* article interviewed a lawmaker and Defendant's Associate Vice President for planning, who led "the university's efforts to update sexual assault policies," in connection with New Jersey's legislative proposals addressing campus sexual assault. (*Id.* ¶ 182.) The Associate Vice President stated, "victim advocacy is an important component of any support system" and that Rider is working "collaboratively with local organizations such as Womanspace, which is known throughout Mercer County for providing victim-centered services to women who are victims of sexual and domestic violence." (*Id.*) The lawmaker stated, "Let's face it, men are the perpetrators more often than not." (*Id.*)

In addition, in November 2014, Dean Campbell during a rally seeking to end sexual violence on college campuses announced "the launch of the Rider Men's Project, which aims to prevent any personal violence or abuse within the community by exploring the male identity through education and mentoring." (*Id.* ¶ 183.) Further, an October 26, 2015, article by one of Defendant's students also inferred a concern for females as victims. (*Id.* ¶ 187.) Her article stated, in part: "As females, we attend college to further our education. The fact that we are more likely

23

to be targeted and assaulted is not our fault. Young women in college need to know it is not wrong to report sexual assaults." (*Id.*)

These statements made by Defendant's officials and its student body create a plausible inference that Defendant's administration was cognizant of, and sensitive to female victims, to the point that one can also plausibly infer a history of not taking seriously complaints of female students and/or a history of males as accusers, which led Defendant to adopt gender bias policies and procedures in its disciplinary hearings.

Although Dean Campbell's statement, "I'm going against you," and other statements made by Defendant's officials do not directly refer to Plaintiff's sex or demonstrate a bias against Plaintiff on the basis that he is a male, those statements combined with Dean Campbell's launch of the Rider Men's Project and other officials' statements regarding gender, however, can plausibly infer bias in favor of an alleged female victim of sexual assault. (*Id.* ¶ 75.)

Moreover, combined with the above allegations, Plaintiff allegations that the disciplinary proceedings were significantly one-side, that the proceedings were flawed, and that he was punished severely, "give[s] rise to an inference of bias." *Collick*, 2016 WL 6824374 at 11. While the Court previously distinguished *Collick* claiming the facts alleged there were more egregiously one-sided, Plaintiff has amended his Complaint to add more details about how the disciplinary proceeding was one-sided and those details combined with Defendant's officials' statements are sufficient to pass muster under Rule 12(b)(6). Read in the light most favorable to Plaintiff, the Amended Complaint alleges the Policy requires "a trained investigator or investigators to promptly, fairly and impartially investigate the complaint," but that Detective Eggert, was neither fair nor impartial. (ECF No. 39 ¶ 54.) Specifically,

> Detective Eggert assembled a summary affidavit detailing Jane
> Roe's and Jane Roe 2's allegations. The affidavit parroted Jane

24

> Roe's and Jane Roe 2's statements to the [Police Department] and completely ignored the girls' earlier—and contradictory—statements to Public Safety, the office out of which Detective Eggert himself works. . . . He simply accepted wholesale Jane Roe's and Jane Roe 2's revised and changed statements without exercising a critical or inquiring eye.

(*Id.* ¶ 71.) In addition, Plaintiff alleges:

> Just days before the December 4 formal hearing, [he] learned that the three designated Board members all reported, either directly or through others, to Dean Campbell. This was a clear conflict of interest. It was Dean Campbell who had urged Jane Roe and Jane Roe 2 to make a report to the [Police Department]. It was Dean Campbell who had suspended [Plaintiff] on October 19, 2015. It was Dean Campbell who had summarily declared that he was "going against" [Plaintiff]. And, on information and belief, it was Dean Campbell who had directed the community standards panel to continue [Plaintiff's] interim suspension.

(*Id.* ¶ 91.)

Therefore, the Court finds Plaintiff has sufficiently plead facts demonstrating a plausible inference of intentional gender discrimination to survive a Rule 12(b)(6) motion to dismiss. Accordingly, Defendant's Motion to Dismiss Plaintiff's Count V as to his erroneous outcome theory is **DENIED**.

### 2. Selective Enforcement

Defendant argues Plaintiff's Amended Complaint "makes no allegation that any female students who were similarly situated to Plaintiff – i.e., accused of sexual assault involving █ ███████████████ – were treated more favorably than male students." (ECF No. 43 at 23.) Specifically, Defendant argues "Plaintiff cannot use Jane Roe 2 as a comparator because she is not similarly situated to Plaintiff," since Joe Doe never filed a complaint against Jane Roe 2. (*Id.*)

Plaintiff argues Jane Roe 2 is similarly situated to Plaintiff, even though Joe Doe never filed a complaint against her, because "Rider was required to investigate whether Jane Roe 2

25

violated the school's sexual misconduct policy and take appropriate steps" according to the Policy. (ECF No. 44 at 28.) The Court does not agree. "[B]ecause Plaintiff has not specifically identified a female student who *was accused* of violating [Rider]'s Code of Student Conduct and was not dismissed from [Rider], the Court finds that Plaintiff has not sufficiently pled a claim for Title IX hostile environment/sexual harassment." *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1067-68 (S.D. Ohio 2017) (emphasis added). Plaintiff does "not allege that a *similarly accused female* was treated differently under [Rider's] disciplinary process, the 'selective enforcement' standard is inapplicable." *Cummins*, 662 F. App'x 437, 452 n.10 (6th Cir. 2016) (emphasis added); *Schaumleffel v. Muskingum Univ.*, No. 17-cv-463, 2018 WL 1173043, at *17 (S.D. Ohio Mar. 6, 2018) ("Plaintiff, here, has failed to assert any allegations that a female student was not disciplined by Muskingum *after a complaint was filed* similar to the allegations made against Plaintiff in this case.") (emphasis added).

Plaintiff argues *Miami University* allowed an Equal Protection claim based on allegations that the university initiated an investigation against a male student for alleged sexual misconduct but not against the female student who initiated the sexual contact with the male, even though neither of them filed a complaint. (ECF No. 44 at 29.) The *Miami University* court held:

> The district court was incorrect to suggest that John needed to have made a formal complaint about Jane in order to plead a deliberate-indifference claim. We require only that "the funding recipient had actual knowledge of the sexual harassment," and not that the plaintiff followed a formal procedure to put the funding recipient on notice.

882 F.3d at 591. However, *Miami University*'s discussion was in the context of a deliberate indifference claim and not a selective enforcement claim. The Southern District of Ohio has declined to follow it for that reason and this Court does same. *Doe v. Ohio State Univ.*, No. 16-cv-171, 2018 WL 4008038, at *3 (S.D. Ohio Aug. 20, 2018) ("Although the Sixth Circuit's decision

26

in *Miami Univ.* suggests that the Court can consider Jane Doe a similarly-situated member of the opposite sex and that John Doe did not have to file a formal complaint against her to be similarly situated, this discussion is still in the context of deliberate indifference and not selective enforcement. . . . Therefore, the Court does not find that there has been a change in controlling law regarding selective enforcement claims to justify reconsideration of dismissal of that claim."). Accordingly, Defendant's Motion to Dismiss Plaintiff's Count V claim as to his selective enforcement theory is **GRANTED**.

### 3. Deliberate Indifference

Defendant argues Plaintiff has not sufficiently plead a deliberate indifference claim because he does not offer facts demonstrating Defendant's actions were "clearly unreasonable" to constitute gender discrimination. (ECF No. 43 at 27.) In addition, Defendant argues "the deliberate indifference theory fails because, as explained above, there is no showing that Rider's response was motivated by his sex." (*Id.* at 28.) Plaintiff argues he has pled sufficient facts demonstrating Defendant's actions were "clearly unreasonable." (ECF No. 44 at 31-32.)

Deliberate indifference claims are traditionally brought in cases where a school has ignored a sexual harassment or assault victim's complaint. *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 191 (D.R.I. 2016). "[C]ourts have questioned its application to a case of a disciplined student," but have none the less applied it. *Id.*; *see Marshall v. Ohio Univ.*, No. 15-cv-775, 2015 WL 1179955, at *8 (S.D. Ohio Mar. 13, 2015) ("It is unclear as to how exactly this [deliberate indifference] claim applies to the facts of this case, as usually, this claim is asserted by a victim against a school or university official who failed to protect him or her from harassment or otherwise address the alleged misconduct—actions that [Ohio University] officials undisputedly took, to protect the alleged victim from [the accused student]."). As Plaintiff notes, *Wells* allowed a deliberate

indifference claim to proceed as to a disciplined student. 7 F. Supp. 3d at 751-52. At this stage of the litigation and because neither party has presented a Third Circuit or New Jersey District Court case rejecting a deliberate indifference claim as to a sexual harassment or assault victim, the Court will allow it to proceed.

To establish deliberate indifference, "the recipient's response to the harassment or lack thereof [must be] clearly unreasonable in light of the known circumstances." *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 757 (E.D. Tenn. 2009) (quoting *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 446 (6th Cir. 2009)). Courts have also established a plaintiff must allege the complained of conduct was motivated by a gender bias. *Sahm*, 110 F. Supp. 3d at 778.

As a preliminary matter, the Court has already found Plaintiff has plead enough facts to plausibly infer that Defendant's actions were motivated by his sex. As such, the Court will only address whether Defendant's response was "clearly unreasonable."

In *Wells*, the plaintiff was accused of sexual assault by his female resident advisor. *Id.* at 747. The complaint alleged Xavier had been under investigation concerning alleged mishandling of at least three prior sexual assault allegations, which "made [the plaintiff] into a scapegoat so as to demonstrate a better response" to those allegations. *Id.* In addition, the complaint alleged the county prosecuting attorney investigated the rape allegation, doubted the accusation, "attempted to communicate his doubts" to Xavier's president, and asked the president to "hold off on any campus investigation pending the outcome of his official investigation." *Id.* at 748. Nonetheless, according to the complaint, Xavier held an unfair disciplinary hearing that failed to comply with its policies, found the plaintiff to be responsible for a "serious violation of the Code of Student Conduct," and determined expelled the plaintiff. *Id.*

In *Wells*, based on the above facts, the court refused to dismiss the plaintiff's Title IX deliberate indifference claim, finding the plaintiff adequately alleged that Xavier's president was deliberately indifferent to the plaintiff's rights because Xavier had pursued disciplinary proceedings despite the prosecuting attorney having warned the president that the claims of sexual assault were unfounded, and also alleged that the president allowed a defective hearing to proceed "with the goal of demonstrating [to federal investigators] that [it] was taking assault allegations seriously." *Id.* at 752.

The Court finds this case similar enough to the *Wells* case to pass muster under Rule 12(b)(6). Here, Plaintiff's Amended Complaint also alleges Defendant's conducted a disciplinary hearing after the Prosecutor's Office declined to prosecute Plaintiff. (ECF No. 39 ¶¶ 5, 68.) In addition, Plaintiff alleges Defendant pursued disciplinary proceedings to combat the federal pressures occurring prior to and at the time of the disciplinary hearing. (ECF No. 39 ¶¶ 168, 180.) Accordingly, Defendant's Motion to Dismiss Plaintiff's Count V claim as to his deliberate indifference theory is **DENIED**.

### B. CFA (Count III)

Defendant argues "Plaintiff's Amended Complaint contains no factual allegations to demonstrate that any alleged unlawful conduct caused Plaintiff to suffer an ascertainable loss." (ECF No. 43 at 29.) Specifically, Defendant argues "Plaintiff does not allege that he saw or heard any such alleged representations before he decided to enroll and pay tuition to Rider." (*Id.* (emphasis omitted).) Plaintiff argues Defendant's failure to abide by The Source and the Policy cost him "reimbursement of his tuition, tutoring fees to keep him current with coursework that the University knew he would never return to, and tens of thousands of dollars in attorneys' fees to fight an unwinnable fight." (ECF No. 44 at 34-35.) Put simply, Plaintiff alleges had he known

Defendant would not abide by its policies[,] he would have left Rider "and been reimbursed nearly

$20,000 in tuition monies already paid." (*Id.* at 34.)

      The CFA states, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . .

N.J.S.A. § 56:8-2. Courts have interpreted this section to require the following three elements to

state a cause of action under the CFA: "1) unlawful conduct by defendant; 2) an ascertainable loss

by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."

*Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (citing *Int'l Union of Operating

Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1087 (N.J. 2007)).

      An "unlawful practice" is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J.S.A. 56:8-2. "The [CFA] creates three categories of unlawful practices: affirmative acts,

knowing omissions, and violations of state regulations." *Maniscalco v. Brother Int'l Corp. (USA)*,

627 F. Supp. 2d 494, 499 (D.N.J. 2009) (quoting *Vukovich v. Haifa*, No. 03-737, 2007 WL 655597,

*9 (D.N.J. Feb 27, 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994))).

Affirmative acts require no showing of intent on behalf of the defendant. *See Cox*, 647 A.2d at 462; *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977). "Thus, a defendant who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence or the intent to deceive." *Vukovich*, 2007 WL 655597, at *9 (citation omitted). "In contrast, when the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge, thereby making intent an essential element of the fraud." *Id.*

"The third category of unlawful acts consists of violations of specific regulations promulgated under the [CFA]." *Cox*, 647 A.2d at 462. "In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations." *Id.* (citation omitted). Unlawful acts expressly regulated by other statutes, regulations, or rules not promulgated under the CFA can give rise to a CFA claim. *See Henderson v. Hertz Corp.*, No. L-6937-03, 2005 WL 4127090, at *5 (N.J. Super. Ct. App. Div. June 22, 2006); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 552-56 (N.J. 1997). However, the CFA does not create strict liability for violations of other statutes, regulations, or rules not promulgated under the CFA. *See Henderson*, 2005 WL 4127090, at *5.

An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793. (N.J. 2005). A "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland*, 964 A.2d at 749. Courts support alleged damages based on an out-of-pocket theory or a benefit of the bargain theory. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99-103 (D.N.J. 2011); *Thiedemann*, 872 A.2d at 792. "An out-of-pocket-loss theory will suffice only if the product received was essentially worthless." *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 374 (D.N.J. 2015). "A

31

benefit-of-the-bargain theory requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Id.* (citation omitted).

Additionally, plaintiffs must set forth allegations sufficient to show those losses are causally connected to defendant's alleged conduct. *Bosland*, 964 A.2d at 749. It is not sufficient to make conclusory or broad-brush allegations regarding defendant's conduct; plaintiff must specifically plead those facts. *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008). This requires, for example, pleading when and to whom the alleged fraudulent statements were made. *See Dewey*, 558 F. Supp. 2d at 527.

The Court finds Plaintiff's Amended Complaint fails to sufficiently plead a CFA claim. The Amended Complaint does not plead Plaintiff suffered an ascertainable loss. An "ascertainable loss" is one that is "quantifiable or measurable," *Thiedemann*, 872 A.2d at 793, and must be "a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland*, 964 A.2d at 749. The Amended Complaint does not allege Plaintiff relied on the Policy and/or Source when enrolling at Rider or that he would have withdrawn from Rider and obtained a refund. Plaintiff's opposition contends Defendant "defrauded" him by not abiding by the Policy or Source during the disciplinary proceedings, which cost him "reimbursement of his tuition, tutoring fees to keep him current with coursework that Rider knew he would never return to, and tens of thousands of dollars in attorneys' fees to fight an unwinnable fight." (ECF No. 44 at 34-35.) Even so, Plaintiff cannot amend his pleadings by way of his brief. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In fact, the Amended Complaint does not allege any definite, certain and measurable loss. Accordingly, Defendant's Motion to Dismiss Plaintiff's Count III is **GRANTED without prejudice**.

### C. Promissory Estoppel and Reliance (Count IV)

Defendant argues Plaintiff's promissory estoppel claim should be dismissed for failure to identify a clear and definite promise. (ECF No. 23 at 25.) Plaintiff argues the Complaint alleges a clear and definite promise, "John was provided with a copy of the Policy at the time of his suspension and was told—repeatedly—that [Defendant] would abide by the Policy. John relied on those representations and promises." (ECF No. 25 at 27 (quoting ECF No. 1 ¶ 45 and citing ECF No. 1 ¶ 46).)

In New Jersey, the elements of a promissory estoppel claim are "(1) a clear and definite promise' (2) made with the expectation that the promisee will rely on it (3) reasonable reliance; and (4) definite and substantial detriment." *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cty. of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).

The Court finds Plaintiff's promissory estoppel claim does not plead a "clear and definite promise" made with the expectation that Plaintiff would rely on it, and that Plaintiff's reliance was reasonable. The Amended Complaint alleges that not only does the Policy and The Source create a promise, but that Dean Campbell promised Plaintiff on October 18, 2015, Defendant would abide by the Policy and Source. (ECF No. 39 ¶ 53.) In addition, on October 30, 2015, when the community standards panel was convened, the chairwoman of the panel represented to Plaintiff that Defendant would follow all procedures in the Policy and The Source. (*Id.*) On November 24, 2015, the Director of the University's Office of Community Standards sent a letter to Plaintiff which stated it would follow the Policy and The Source. (*Id.*) Nonetheless, these broad allegations fall short of identifying a "clear and definite" enforceable promise. Several courts have rejected similar promissory estoppel claims based on promises of impartiality and fairness in university

manuals and policies. *See Doe v. Univ. of Chicago*, No. 16-08298, 2017 WL 4163960, at *10 (N.D. Ill. Sept. 20, 2017) (dismissing a promissory estoppel claim on, among other things, the university's statement promising "a prompt, fair, impartial and thorough investigation and resolution that is consistent with the University's policies and is transparent to the complainant and the respondent," because it reflects "a commitment to broad principles of fairness and nondiscrimination without giving specifics about how those goals will be achieved"); *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 408 (W.D.N.Y. 2017) (dismissing a promissory estoppel claim "based on explicit promises within the Student Handbook, such as its statement that the chair of a hearing panel is responsible for conducting a fair, orderly, and expeditious hearing" because it is "not a 'clear and unambiguous promise' that would reasonable induce reliance") (citations omitted); *Ezold v. Wellpoint, Inc.*, No. 06-00381, 2007 WL 1238725, at *5 (D. Conn. Apr. 28, 2007) ("Statements in a job description or an anti-harassment policy are at the most statements of intention or an articulation of company goals and objectives, and cannot give rise to liability under a theory of promissory estoppel.").

Moreover, The Source contains a Reservation of Rights stating:

> [A]ll policies and procedures . . . are subject to change or elimination at any time and without notice or published amendment. In addition, Rider reserves the right to make changes at any time, without prior notice, to the program, policies, procedures and other information, which are described in this document only as a convenience to its readers. . . . Rider University also reserves the right to vary the policies and procedures in this document on a case-by-case basis, as fair and reasonable treatment of interested parties requires in the University's best judgment.

(ECF No. 39, Ex. B at 4.) This provision is not the kind of unambiguous promise upon which a reasonable person would be entitled or expected to rely on. *See Univ. of Chicago*, 2017 WL 4163960 at *10 (finding that when a manual states it is subject to change "at the sole discretion of

the University[,] . . . reliance would not have been expected or foreseeable to the University.") Accordingly, Defendant's Motion to Dismiss Count IV is **GRANTED without prejudice**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Count V is **GRANTED in part and DENIED in part**. Defendant's Motion to Dismiss Plaintiff's Count V as to his erroneous outcome and deliberate indifference theories claims is **DENIED**. However, Defendant's Motion to Dismiss Plaintiff's Count V claim as to his selective enforcement theory claim is **GRANTED without prejudice**. Defendant's Motion to Dismiss Plaintiff's Counts III and IV is **GRANTED without prejudice**.

Date: October 31, 2018                                    */s/ Brian R. Martinotti*
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**